IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **MARY TRIPP,**<br><br>   **Plaintiff,**<br><br>v.<br><br>**BERMAN & RABIN, P.A.,** and<br>**VELOCITY INVESTMENTS, LLC,**<br><br>   **Defendants.** | Case No. 14-CV-02646-DDC-GEB |

### MEMORANDUM AND ORDER

Plaintiff Mary Tripp filed an Amended Motion for Class Certification (Doc. 16), seeking to represent two classes of persons who received form debt collection letters from defendant Berman & Rabin, P.A. ("Berman") and, for one putative subclass of plaintiffs, such letters from Berman on behalf of Velocity Investments, LLC ("Velocity"). Plaintiff alleges that the form letters sent by defendants did not inform the recipients of the exact amount and character of the debt owed, and, therefore, violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). For the reasons explained below, the Court grants plaintiff's motion.

**I. Factual Background**

Velocity is a New Jersey limited liability company that purchases portfolios of consumer receivables at a discount and liquidates them through debt collection processes. Berman is a Kansas law firm specializing in the recovery of consumer debts. On January 29, 2014, Berman sent plaintiff a form debt collection letter on behalf of Velocity. That letter described plaintiff's debt as: "Balance: $10,717.97, $2,959.92 accrued interest and\or late charges, attorney fees (where applicable), the exact amount to be determined by agreement between you and us or by a court, 10% interest per annum from April 27, 2011." Doc. 16-1.

1

On behalf of the putative classes, plaintiff asserts that defendants' failure to specify whether the debt included attorneys' fees and, if so, the amount of those fees violates two provisions of the FDCPA. First, plaintiff contends that defendants have failed to state accurately the total amount of the debt, as 15 U.S.C. § 1692g(a)(1) requires. Second, plaintiff asserts that defendants misstated the character of the debt and thus violated 15 U.S.C. § 1692e(2)(A). To support her claims, plaintiff cites *Kalebaugh v. Berman & Rabin, P.A.*, 43 F. Supp. 3d 1215 (D. Kan. 2014). There, our Court held that a form collection letter, also sent by Berman and containing the same language as the letter received by plaintiff here, violated both § 1692g(a)(1) and § 1692e(2)(A). *See id*. at 1227-28.

## II.     Legal Standard

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). The Court has considerable discretion when deciding whether to certify a class action. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1227 (10th Cir. 2013) (because class certification involves "intensely practical considerations," decision rests within discretion of trial court); *see also Bateman v. Am. Multi–Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010) (district courts are in the best position to consider the most fair and efficient procedure for litigation); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 555 (S.D. Cal. 2012) (quoting *Ballard v. Equifax Check Serv., Inc.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999) ("class action certifications to encourage compliance with consumer protection laws are 'desirable and should be encouraged'")). But when exercising this discretion, district courts must conduct a "rigorous analysis" and decide whether the putative class satisfies the

requirements of Rule 23. *Comcast*, 133 S. Ct. at 1432; *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

The elements of the class certification standard are (1) numerosity, (2) commonality, (3) typicality, and (4) adequate representation, plus one of the requirements of Rule 23(b)(1) through (3). *See* Fed. R. Civ. P. 23. Plaintiff seeks certification under Rule 23(b)(3). Rule 23(b)(3) also requires plaintiff to demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Rule 23 "'does not set forth a mere pleading standard.'" *Comcast*, 133 S. Ct. at 1432 (quoting *Dukes*, 131 S. Ct. at 2551). As the party requesting class certification, plaintiff bears the burden of "'affirmatively demonstrat[ing]'" compliance with the rule's requirements. *Id.* (quoting *Dukes*, 131 S.Ct. at 2551). Plaintiff "must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 131 S. Ct. at 2551. To decide whether plaintiff has met her burden, the Court "must accept the substantive allegations of the complaint as true," but it does not "'blindly rely on conclusory allegations which parrot Rule 23.'" *Shook v. El Paso Cty.*, 386 F.3d 963, 968 (10th Cir. 2004) (quoting *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1290 n.7 (10th Cir. 1999)). "[T]he Court is not limited to the pleadings but may 'probe behind the pleadings' and examine the facts and evidence in the case." *Tabor*, 703 F.3d at 1227-28 (quoting *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160 (1982)); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (rigorous analysis requires judgments about the persuasiveness of evidence). "[A]ctual, not presumed, conformance with Rule 23(a)" is required. *Dukes*, 131 S. Ct. at 2551 (quoting *Falcon,* 457 U.S. at 160).

The Court's "rigorous analysis" "[f]requently . . . [will] entail some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 131 S. Ct. at 2551. But the Court should not conduct a mini-trial to determine whether the class, if certified, actually could prevail on the merits of their claims. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95, 1201 (2013); *Dukes,* 131 S. Ct. at 2552 n.6.

**III.   Analysis**

    **A.  Class Definitions**

"'Defining the class is of critical importance because it identifies the persons (1) entitled to relief, (2) bound by a final judgment, and (3) entitled under Rule 23(c)(2) to the 'best notice practicable' in a Rule 23(b)(3) action.'" *Sibley v. Sprint Nextel Corp.*, 254 F.R.D. 662, 670 (D. Kan. 2008) (quoting *Manual for Complex Litigation* § 21.222 (4th ed. 2004)). Thus, "the [class] definition must be 'precise, objective, and presently ascertainable.'" *Id*.

Plaintiff here asks the Court to certify two classes. First, plaintiff asks the Court to certify "Class A," consisting of all Kansas residents who received form collection letters from Berman within one year of when plaintiff filed her Petition in state court. The record reveals that plaintiff filed her Petition in the District Court of Wyandotte County, Kansas on October 31, 2014. Doc. 3 at 1. Plaintiff defines Class A to include:

> Class A - all Kansas persons to whom Defendant Berman & Rabin, P.A. sent a letter containing the language quoted in Exhibit A within one year of the filing of this petition.

Doc. 3 at 5; *see also* Doc. 16 at 2-3. Plaintiff also asks the Court to certify "Class B" as a subclass of Class A. Plaintiff defines Class B as:

> Class B – all Kansas persons to whom Defendant Berman & Rabin, P.A. on behalf of Defendant Velocity Investments, LLC sent a letter containing the language quoted in Exhibit A above within one year of the filing of this petition. Class B is a sub-class of Class A.

Doc. 3 at 5-6; *see also* Doc. 16 at 3.

Defendants do not object to plaintiff's proposed class definitions. But the Court concludes that it must modify plaintiff's proposed definitions to ensure that they are precise and that class members are presently ascertainable. *See Davoll v. Webb*, 194 F.3d 1116, 1147 (10th Cir. 1999) ("If the court finds that the proposed definition is not sufficiently definite, it may modify the definition instead of dismissing the proposed action."); *see also Powers v. Hamilton Cty. Pub. Defender Comm'n*, 501 F.3d 592, 617 (6th Cir. 2007) ("[D]istrict courts have broad discretion to modify class definitions . . . .").

Here, plaintiff proposes to define both classes by referring to "language quoted in Exhibit A" and with a temporal range of "within one year of the filing of this petition." This does not identify either class' membership with the requisite precision. Thus, the Court modifies plaintiff's proposed definition for Class A as follows:

> Class A: All persons who, during the period from October 31, 2013 to October 31, 2014, lived in the state of Kansas and received a letter from Berman & Rabin, P.A. containing the following language:
>
> Re:   Your indebtedness to: [*Creditor Name*]
>        Balance:   [$X,XXX], [$X,XXX] accrued interest and/or late charges, attorney fees (where applicable), the exact amount to be determined by agreement between you and us or by a court, [XX%] interest per annum from [*Date*].
>
> The content of the bracketed information in each letter will differ depending on the specific facts that apply to each recipient.

Similarly, the Court modifies plaintiff's proposed definition for Class B as follows:

> Class B: All persons who, during the period from October 31, 2013 to October 31, 2014, lived in the state of Kansas and received a letter from Berman & Rabin, P.A., on behalf of Velocity Investments, LLC, containing the following language:

> Re:   Your indebtedness to: Velocity Investments, LLC
> Balance:   [$X,XXX], [$X,XXX] accrued interest and/or late charges, attorney fees (where applicable), the exact amount to be determined by agreement between you and us or by a court, [XX%] interest per annum from [*Date*].

The content of the bracketed information in each letter will differ depending on the specific facts that apply to each recipient.

The Court concludes that these modified class definitions are more precise than those proposed by plaintiff. It also finds that the modified class definitions are objective and ensure that class members are presently ascertainable. Next, the Court considers whether certification of these two classes is appropriate under Rule 23.

### B.  Rule 23(a) Requirements

Under Rule 23(a), plaintiff, as the party requesting class certification, must show that:

>   (1)  the class is so numerous that joinder of all members is impracticable;
>
>   (2) there are questions of law or fact common to the class;
>
>   (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
>   (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Defendants never dispute that the two classes proposed by plaintiff satisfy all four requirements of Rule 23(a). But, because it must perform a "rigorous analysis" to determine whether both classes comport with Rule 23, *Comcast*, 133 S. Ct. at 1432, the Court addresses each requirement of Rule 23(a), in turn, below.

#### 1.  Numerosity

Rule 23(a)(1) requires plaintiff to demonstrate that the classes "[are] so numerous that joinder of all members is impracticable." To satisfy this numerosity requirement, plaintiff "must

produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved." *Sibley*, 254 F.R.D. at 672 (citing *Rex v. Owens ex rel. Okla.*, 585 F.2d 432, 436 (10th Cir. 1978)). But there is no set formula for determining whether plaintiff has proved numerosity. *Id.*

Here, plaintiff asserts that both classes are sufficiently numerous because each class includes everyone that defendant Berman sent form collection letters during a one-year period. Defendants estimate that Class A may include more than 190,000 members and Class B may include more than 13,000 members. *See* Doc. 39 at 2. Two classes containing at least 13,000 members each are large enough to make joinder of all members impracticable. *See Bogner v. Masari Invs., LLC*, 257 F.R.D. 529, 532 (D. Ariz. 2009) (numerosity requirement met where debt collection letters were sent to over 200 individuals). The Court thus concludes that plaintiff has satisfied the numerosity requirement.

### 2. Commonality

To prove commonality, plaintiff must demonstrate that there are "questions of law or fact common to [each] class." Fed. R. Civ. P. 23(a)(2). This requires plaintiff to show that all class members have "'the same interest and suffer the same injury.'" *Sibley*, 254 F.R.D. at 673 (quoting *Falcon*, 457 U.S. at 156).

As the Supreme Court explained in *Dukes*, the language in the commonality requirement of Rule 23(a)(2) is easy to misread because "[a]ny competently crafted class complaint literally raises common 'questions.'" *Dukes*, 131 S. Ct. at 2551. Plaintiffs' claims must depend upon a common contention "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2551-52. Therefore, it is not the raising of common

"questions" that matters, but rather "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers. *Id*. at 2551 (quotation and citation omitted) (emphasis in original); *see also Burdette v. Vigindustries, Inc.*, No. 10-1083-JAR, 2012 WL 405621, at *12 (D. Kan. Feb. 8, 2012).

Here, plaintiff asserts two claims, both of which are common to each class. First, plaintiff alleges that the language contained in the form collection letters sent by defendants to all class members violated § 1692g(a)(1) and § 1692e(2)(A) of the FDCPA. Second, plaintiff asks the Court to determine the amount of statutory damages due to her and both classes because of defendants' alleged violations. A debt collector who has mailed a form collection letter to all class members satisfies the commonality requirement of Rule 23. *See Talbott v. GC Servs. Ltd. P'ship*, 191 F.R.D. 99, 103 (W.D. Va. 2000) ("Mailing a standardized collection letter satisfies commonality and has been the basis for certification in similar cases."); *Swanson v. Mid Am., Inc.*, 186 F.R.D. 665, 668 (M.D. Fla. 1999) (holding that commonality requirement was satisfied where all class members received the same form collection letter). Plaintiff thus has satisfied the commonality requirement of Rule 23.

### 3. Typicality

Rule 23(a)(3) requires the claims of the named plaintiff "to be typical of the claims of the class they seek to represent." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010). The named plaintiff's interests and claims need not be identical to those of the class. *See id*. (citing *Anderson v. City of Albuquerque*, 690 F.2d 796, 800 (10th Cir. 1982)). As long as the claims of the named plaintiff and class members "are based on the same legal or remedial theory,

differing fact situations of the class members do not defeat typicality." *Id*. (citing *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988)).

Here, plaintiff's claims are the same ones that the two classes can assert. Plaintiff alleges that defendants sent her and the class members standardized collection letters that violated the FDCPA. Thus, plaintiff contends that she and the class members have suffered the same injury. Because her claims are the same ones as those the two classes can assert, the Court concludes that plaintiff has established typicality. *See Ditty v. Check Rite, Ltd.*, 182 F.R.D. 639, 642 (D. Utah 1998) (typicality shown where plaintiff and class members received same debt collection letter).

### 4. Adequacy of Representation

To satisfy the final requirement of Rule 23(a), plaintiff must demonstrate that she "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts consider two questions when determining adequacy of representation: (1) whether the named plaintiff and her counsel have any conflicts of interest with other class members and (2) whether the named plaintiff and her counsel will prosecute the action vigorously on behalf of the class. *In re Motor Fuel Temperature Sales Practices Litig.*, 292 F.R.D. 652, 671 (D. Kan. 2013) (citing *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). Minor conflicts between class members do not prevent certification. *Id*. Only a fundamental conflict about the specific issues in controversy will prevent a named plaintiff from representing the interests of the class adequately. *Id*. A fundamental conflict exists where some class members claim an injury resulting from conduct that benefited other class members. *Id*.

Plaintiff asserts that her interests align with the two classes for two reasons. First, plaintiff will satisfy both her claim and the classes' claims by proving defendants' form

9

collection letter violated the FDCPA.  Second, if she prevails, both she and the classes will recover statutory damages under 15 U.S.C. § 1692k.  The Court agrees that these two assertions show that plaintiff's interests align with the two classes.  Because her claims are the same as those of the class members, the Court finds it improbable that a fundamental conflict will arise between plaintiff's interests and those of the two classes.  The Court also concludes that plaintiff's counsel is sufficiently experienced and qualified to prosecute this suit on behalf of the classes.  Thus, plaintiff has shown that she and her counsel are adequate representatives for the two classes.

### C. Rule 23(b)(3) Requirements

In addition to satisfying all four prerequisites of Rule 23(a), plaintiff must show that the classes meet the requirements for one of the three types of class actions recognized by Rule 23(b).  Here, plaintiff requests class certification under Rule 23(b)(3).

A plaintiff can maintain a class action under Rule 23(b)(3) where:  (1) "questions of law or fact common to all class members predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.").  Defendants never challenge plaintiff's assertion that common questions predominate.  But they do challenge plaintiff on the superiority issue, arguing that the Court should deny certification because a class action is not the superior method for adjudicating the class members' claims.

Consistent with the rigorous analysis requirement, the Court considers both Rule 23(b)(3) requirements in the next two sections.

1. **Predominance**

Plaintiff has demonstrated that common questions of law and fact predominate over individual issues in this case. As explained above, plaintiff's claim that defendants' form collection letter violates § 1692g(a)(1) and § 1692e(2) of the FDCPA is shared by all class members and it relies on common evidence to answer common questions—*i.e.*, a standardized letter sent to all class members. And if plaintiff and the two classes prevail, they stand to recover statutory damages as prescribed by 15 U.S.C. § 1692k(a)(2)(B). While determining the extent of statutory damages may require the Court to resolve some individual questions, such as the amount of actual damages incurred and any additional damages (up to $1,000) to award plaintiff, these considerations do not overwhelm the common issues. *See Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 298 (5th Cir. 2001) (holding individual damage calculations do not defeat predominance when "virtually every issue prior to damages is a common issue"); *Conner v. Automated Accounts, Inc.*, 202 F.R.D. 265, 271 (E.D. Wash. 2001) ("Nonetheless, the Advisory Committee Notes [to Federal Rule of Civil Procedure 23(b)(3)] expressly state that . . . individual proof of damages will not preclude a finding of predominance.") (internal quotations and citation omitted). The Court thus concludes that plaintiff has satisfied the predominance requirement of Rule 23(b).

2. **Superiority**

To establish superiority under Rule 23(b)(3), the moving plaintiff must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Factors relevant to the Court's determination of superiority include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

>(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
>(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
>(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Defendants contend that plaintiff cannot carry her burden on this requirement. Defendants argue that the statutory damage cap that applies to a FDCPA class action combined with the large number of potential class members limits each member to a de minimis recovery. Specifically, because the putative class members could recover more if they filed individual actions against defendants, defendants contend that a class action is an inferior method of adjudication.[1] Plaintiff counters that defendants' contention is contrary to the standards for superiority and federal courts consistently have rejected this argument.

The FDCPA permits individuals to recover their actual damages in addition to statutory damages of up to $1,000. 15 U.S.C. § 1692k(a)(2)(A). But in class actions, the FDCPA limits damages to class members' actual damages and their pro rata share of "the lesser of $500,000 or 1 per centum of the net worth of the debt collector." 15 U.S.C. § 1692k(a)(2)(B). Here, both defendants have disclosed evidence indicating, they contend, that 1% of their combined net worth is less than the FDCPA's $500,000 statutory damage ceiling. *See* Docs. 41-42. Defendants also estimate that Class A may contain over 190,000 members, including over 13,000 members of Class B. Thus, defendants contend that if the Court certifies a class action

---

[1] Defendants also advance a one sentence argument asserting that a class action is not the superior method for adjudication because the "cost to manage notice and payment to the class far exceeds the total damages available to the class." Doc. 39 at 6. While this issue could serve as the basis for a decertification motion in the future, at this time, there is no evidence in the record about those potential costs. The Court cannot deny class certification based only on defendants' speculation that class manageability concerns may exist.

and the class prevails, each class member would recover less than $2.63.  Defendants argue that it "makes no sense for a putative class member to relinquish a potential recovery of actual damages plus statutory damages up to $1,000" in favor of a de minimis class recovery.  Doc. 39 at 4.  Defendants cite two cases from the District of Minnesota as support for their argument.

In *Sonmore v. CheckRite Recovery Servs., Inc.*, the district court refused to certify a FDCPA class action because it found that the class representatives lacked sufficient incentives to represent class members adequately and vigorously.  206 F.R.D. 257, 263 (D. Minn. 2001).  The court also held that a class action was not the superior method for adjudication because individual class members stood to receive only a de minimis recovery.  *See id*. at 265-66.  Two years later, in *Jones v. The CBE Group, Inc.*, the Minnesota district court again concluded that a de minimis class recovery under the FDCPA defeated Rule 23(b)(3) superiority.  215 F.R.D. 558, 570 (D. Minn. 2003).

But defendants concede, as they must, that other federal courts have held that a FDCPA class action is a superior method for adjudication, even where class members stand to recover a de minimis amount.  *See Weber v. Goodman*, 9 F. Supp. 2d 163, 170-71 (E.D.N.Y. 1998) (holding superiority requirement met because "[h]inging the appropriateness of the class action form to the number of improper letters sent is inappropriate . . . ."); *Kalish v. Karp & Kalamotousakis, LLP*, 246 F.R.D. 461, 464-65 (S.D.N.Y. 2007) (finding class action was superior method of adjudication because "litigating as a class retains substantial value because it encourages the prosecution of claims *en masse* that would not be prosecuted individually."). Indeed, even the Minnesota court has reached this conclusion in some cases.  *See, e.g., Egge v. Healthspan Servs. Co.*, 208 F.R.D. 265 (D. Minn. 2002) (FDCPA class action was superior despite a de minimis class recovery) (cited in *Jones*, 215 F.R.D. at 570).

13

Plaintiff also contends that federal courts around the country have rejected defendants' argument that a debt collector's low net worth and a large putative class precludes class certification under Rule 23(b)(3). She cites, for example, *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997). There, the Seventh Circuit held that a de minimis recovery alone does not make a FDCPA class action inferior to individual actions. *Id*. at 344-45. In reaching this conclusion, the Seventh Circuit noted that an argument advocating for individual FDCPA suits may ignore other important considerations, such as whether "the plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing[,] and able to find an attorney willing to take her case." *Id*. at 344.

Plaintiff also cites a number of district court opinions concluding that a FDCPA class action is a superior method for adjudication. *See Lemire v. Wolpoff & Abramson, LLP*, 256 F.R.D. 321, 331 (D. Conn. 2009) ("[E]ven if [defendant's] net worth turns out to be negative, a class action will still be superior to individual litigation."); *Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 444 (N.D. Ill. 2008) ("Defendant engaged in standardized conduct by sending form letters to many consumers, and each individual consumer's claim would likely be too small to vindicate through an individual suit. Therefore, a class action is the superior method to resolve these claims."); *Kalish*, 246 F.R.D. at 464 (holding that a FDCPA class action is the superior method despite a potential de minimis recovery for class members); *Barkouras v. Hecker*, No. 06-0366, 2006 WL 3544585, at *4 (D.N.J. Dec. 8, 2006) (finding that an insolvent defendant did not preclude certification of a FDCPA class action); *Levin v. Kluever & Platt, LLC*, No. 03-C-2160, 2003 WL 22757763, at *3 (N.D. Ill. Nov. 19, 2003) (concluding a FDCPA class action was superior even in light of a de minimis class recovery).

The Court finds no guidance in this FDCPA context from the Tenth Circuit and no earlier decision by our Court on this issue.  After reviewing the various decisions cited by plaintiff and defendants, the Court is persuaded by the reasoning advanced by those courts that have permitted FDCPA class actions where class recovery, in the end, may be de minimis.  The potential recovery of class members is but one factor that guides the evaluation of a putative class action's superiority.  Other considerations include whether class members are aware of the alleged FDCPA violation, whether those members would be willing to pursue individual actions, and whether those members have the means or ability to retain legal counsel.  *See Mace*, 109 F.3d at 344.  The Court cannot presume that the putative class members know that defendants' form collection letters may violate § 1692g(a)(1) and § 1692e(2).  *See Ferree v. Marianos*, 129 F.3d 130, 1997 WL 687693, at *1 (10th Cir. Nov. 3, 1997) (unpublished table opinion) (recognizing that courts analyze FDCPA claims "by how the 'least sophisticated consumer' would interpret the notice received from the debt collector").  Nor can the Court presume that class members would choose to initiate and prosecute individual lawsuits to recover only $1,000 in statutory damages.  *See Jackson v. Nat'l Action Fin. Servs., Inc.*, 227 F.R.D. 284, 290 (N.D. Ill. 2005) ("FDCPA affords recovery of up to $1,000 in statutory damages for individual plaintiffs; as such, the potential recovery here is not likely to provide sufficient incentive for members . . . to bring their own claims.").

Likewise, the Court is not persuaded by defendants' belief that class members should be free to maximize their individual recoveries under § 1692k(a)(2).  As articulated by the Southern District of New York:

> This is not a situation where claimants, waiting at the courthouse door to assert their FDCPA rights, will be denied justice by class certification.  The unfortunate reality of this situation is that most of Defendant's . . . FDCPA violations would probably go unnoticed absent this lawsuit.  Of course, that is the very reason

> Defendant now opposes class certification: not out of any "feigned concern" for claimants, . . . but because it will allow Defendant effectively to avoid liability for its conceded violations of federal law. This is precisely the kind of situation that class action litigation was meant to address.

*Kalish*, 246 F.R.D. at 464-65 (internal citation omitted). In addition, Rule 23 already preserves class members' ability to bring separate, individual actions. Under Rule 23(c)(2)(B), the Court must notify all putative class members about a class action and "exclude from the class any member who requests exclusion." Fed. R. Civ. P. 23(c)(2)(B)(v). Thus, a potential class member may opt-out of the class and pursue an individual FDCPA suit against defendants after the Court grants certification.

Finally, plaintiff objects to the financial information that defendants have submitted under seal to support their argument on this issue. Plaintiff contends that Berman has failed to submit audited financial statements prepared in accordance with generally accepted accounting principles ("GAAP"). *See Barkouras*, 2006 WL 3544585, at *4 (deferring determination of defendants' net worth until presented with financial information conforming with GAAP). Plaintiff also argues that Velocity's financial statements are stale and cannot defeat class certification at this stage in the case. Because it rejects defendants' argument against superiority, the Court need not address the adequacy of defendants' financial information at this time. *See Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 340 (E.D.N.Y. 2013) (holding that a determination of defendant's net worth was not necessary at class certification stage); *Seawell v. Universal Fid. Corp.*, No. 05-479, 2007 WL 1030544, at *3 (E.D. Pa. Apr. 2, 2007) ("[I]t is well established that a defendant's net worth is calculated at the time of settlement/resolution of the case."). But the Court notes that plaintiff correctly argues that defendants' net worth should be determined, if necessary, based on financial statements prepared in accordance with GAAP. *See Sanders v. Jackson*, 209 F.3d 998, 1001 (7th Cir. 2000) ("[B]ecause there is no indication in the FDCPA

16

that the term net worth should be used in anything but its normal sense, we also look to book net worth or balance sheet net worth as reported consistently with GAAP.").

The Court makes no judgment whether defendants have violated the FDCPA. But because it is plausible that many putative class members may not be aware of the alleged FDCPA violations, the potential recovery for each class member under the FDCPA is small, and class members may opt-out of a class in favor of individual suits, the Court concludes that a class action is the superior method for adjudicating this dispute.

## IV.     Notice

Rule 23(c)(2)(B) provides that "[f]or any class certified under Rule 23(b)(3), the court must direct class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The Court thus orders the parties to confer and submit a proposed order about notice that complies with Rule 23(c)(2)(B) by October 26, 2015.

## V.      Conclusion

The Court concludes that plaintiff has satisfied all requirements for certification of a Rule 23(b)(3) class action. Thus, the Court grants plaintiff's Amended Motion for Class Certification.

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiff's Amended Motion for Class Certification (Doc. 16) is granted.

**IT IS FURTHER ORDERED BY THE COURT THAT** the parties submit a joint proposed order for providing notice to class members as required by Fed. R. Civ. P. 23(c)(2)(B) on or before October 26, 2015.

**IT IS SO ORDERED.**

**Dated this 29th day of September, 2015, at Topeka, Kansas.**

                                             **s/ Daniel D. Crabtree**
                                             **Daniel D. Crabtree**
                                             **United States District Judge**