# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Mary Tripp, | |
| Plaintiff, | Case Number: 14-cv-2646-DDC-GEB |
| vs. | |
| Berman & Rabin P.A. | |
| And | Class Action |
| Velocity Investments, LLC | |
| Defendants. | |

## PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff moves for preliminary approval of the class action settlement reached between herself and Defendants Berman & Rabin P.A. and Velocity Investments, LLC ("Defendants"). The Court certified a class against each Defendant to resolve Plaintiff's claim that Defendants sent Kansas residents a form collection letter that failed to state the amount of the debt, and misrepresented the nature or amount of the debt, in violation of the requirements of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.* ("FDCPA").

Defendants vigorously deny these allegations. Nevertheless, after discovery, contested class certification proceedings, and a formal mediation with Magistrate Judge Birzer, the parties were able to reach a settlement that resolves the claims of Plaintiff and the Settlement Class. A copy of the Settlement Agreement and Release ("Agreement") is attached hereto as *Appendix 1*.

Notably, the settlement provides the class with *more than* the maximum statutory damages available under the FDCPA. The FDCPA limits the statutory damages recoverable by a class to a maximum of $500,000 or 1% of the debt collector's net worth, whichever *is less*. 15 U.S.C. §1692k(a)(2)(B). According to Defendants' financial statements, their net worth is so low that the

maximum each class could recover (assuming the jury awarded the maximum) is less than $2.63. (ECF No. 58, pp. 12-13).[1] In opposing class certification, Defendants argued that a class action is not superior to individual litigation because the maximum potential class member recovery is *de minimis*, whereas the FDCPA allows a named plaintiff to recover up to a maximum of $1,000 in statutory damages. (ECF No. 58, p.13). However, the Court granted class certification because the Court recognized that even if the potential statutory damages recovery is low for the class, many class members would not be aware of their right to pursue their own claim as a named plaintiff, others would be unwilling to do so or unable to retain counsel, and certification would allow class members to receive notice of the lawsuit and opt out to pursue their own individual claim if they so chose. (ECF No. 58, pp.15-16).

Now, to resolve this litigation, Defendants agree to pay $6,500 to satisfy the class's claim for statutory damages, to be divided *pro rata* among those of the approximately 1,200 class members who do not opt out and choose to submit a timely claim for a share of the recovery. This is more than double the $2.63 per class member that Defendants claimed to be the maximum statutory damages recoverable. Moreover, the settlement requires notice to be sent to the class members advising them of the right to opt out, as provided by Federal Rule 23, thus giving class members the choice of pursuing their own individual claim, or staying in the class and submitting a claim for a share of the class recovery. Finally, in addition to providing more than the potential maximum statutory damages to a class, the settlement provides Plaintiff with the maximum statutory damages available to a named plaintiff under the FDCPA.

---

[1] Class counsel believes that if the class's potential is based on the financial statements Defendants filed in opposition to class certification, the maximum potential statutory damages recovery per class member is actually less than a $1.00.

Significantly, the class recovery will *not* be reduced by the cost of administering the Settlement, or by the payment of class counsel's attorneys' fees and expenses. Unlike conventional class settlements in which these items are paid out the class recovery, here the settlement requires Defendants to pay fees, costs and settlement administration expenses *in addition* to the class recovery.

If the Settlement is approved and consummated, Plaintiff's counsel estimates that each class member who submits a timely claim will receive approximately $105. No money will revert back to Defendants. Given the fact that the class is receiving more than the maximum statutory damages provided by the FDCPA, the results achieved are outstanding.

The Court already ruled that this case meets the requirements for class certification under Federal Rule 23, and that Plaintiff and her counsel are adequate to represent the class. (ECF No. 58 at p.10 ("The Court also concludes that plaintiff's counsel is sufficiently experienced and qualified to prosecute this suit on behalf of the classes.") Class counsel's declarations in support of the settlement are attached as *Appendix 2* and *Appendix 3*, respectively. Accordingly, by this motion, Plaintiff asks the Court to enter an order preliminarily approving the Settlement and the plan for giving notice of it to the Settlement Class, as well as to set this matter for a fairness hearing, and to grant such further and additional relief as deemed just.

## I. NATURE OF THE LITIGATION

### A.     Litigation, Mediation, and Settlement

The FDCPA exists to prevent abusive, unfair and deceptive debt collection practices, and level the playing field between debt collectors and consumers by requiring debt collectors to give consumers important information when communicating with them. *See* 15 U.S.C. §1692(e) and *e.g.*, 15 U.S.C. §1692e(11) and §1692g(a)(1), and *see Thomas v. Portfolio Recovery Assocs. LLC*,

2013 U.S. Dist. LEXIS 113639 at *11 (S.D. Cal. Aug. 12, 2013) (FDCPA meant to level the playing field). To encourage private litigants to enforce the FDCPA's requirements, Congress wrote the FDCPA to allow litigants to recover statutory damages for any violation, plus their attorneys' fees and costs. *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 393 (4th Cir. 2014) (Congress intended to "encourag[e] consumers who were the target of unlawful collection efforts to bring civil actions."), *citing Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995) ("The reason for mandatory fees is that congress chose a 'private attorney general' approach to assume enforcement of the FDCPA.") Consistent with this intent, Plaintiff Tripp brought this action in response to Defendants' lawsuit against her to remedy Defendants' alleged systematic violation of FDCPA provisions that require debt collectors to accurately state the amount of the debt they are trying to collect. (ECF No. 3).

Specifically, Plaintiff alleges that Defendants, a bad-debt buyer (Velocity) and the law firm it hired to collect the debts it bought (Berman & Rabin), violated the FDCPA by sending Plaintiff and numerous other Kansas residents a form collection letter that failed to specify the amount of the debt Defendants are trying to collect, and that suggests the amount owed may additional sums that are not owed. In particular, the form letter states the amount owed may include "attorney fees (where applicable), the exact amount to be determined by agreement between you and us or by a court…," leaving recipients to wonder whether they owe attorney fees or not. (ECF No. 58, p.1).

Plaintiff alleges this form letter violates §1692g(a)(1), which requires debt collectors to state the actual amount of the debt (not simply what it might be), and §1692e(2)(A) of the FDCPA, which requires debt collectors to refrain from misrepresenting the amount, status or character of the alleged debt. The protections of §1692g(a) and §1692e(2) are particularly important when dealing with bad debt buyers because often the debt portfolios a bad debt buyer acquires are stale,

4

and thus may contain inaccurate or incomplete information about the debt or debtor, or omit information necessary to determine what is actually owed, or who actually owes it. *See Delgado v. Capital Mgmt. Servs. LP*, 2013 U.S. Dist. LEXIS 40796 at *11-*12 (N.D. Ill. Mar. 22, 2013) (discussing the FTC's Report, *The Structure and Practices of the Debt Buying Industry*).

The litigation has been hard fought. Plaintiff Tripp filed this case as a counterclaim to the debt collection lawsuit Defendants filed against her in in Kansas state court. (ECF No. 1). Defendants removed the case to this Court on December 29, 2014. (*Id.*). Defendants each filed answers and affirmative defenses. (ECF No. 17, 18). Discovery ensued about the class and Defendants' net worth, because the FDCPA caps the statutory damages recoverable by a class at 1% of the debt collector's net worth. 15 U.S.C. §1692k(a)(2)(B). The parties also litigated class certification, and Defendants vigorously opposed the motion, but the Court granted it. (ECF No. 58). Thereafter, Defendants made Federal Rule 26(a)(2) disclosures regarding experts who would opine that Defendants' financial statements accurately reflected the low net worth Defendants claimed in opposition to class certification.

On November 18, 2015, after submitting formal settlement memoranda to the Court, the parties participated in a formal mediation with Magistrate Judge Birzer. (ECF No. 64). As a result of the mediation, the parties reached a preliminary class settlement. (*Id.*) Thereafter, over the course of more than a month, the parties negotiated the final terms and drafted the necessary papers to attendant to the Settlement. A copy of the settlement agreement is attached as *Appendix 1*.

## II. SUMMARY OF THE PROPOSED SETTLEMENT

The key terms of the proposed settlement are as follows:

**A.     Class Definition.** The Settlement Class includes the members of the Classes that have already been certified by the Court, which are defined as follows:

> Class A: All persons who, during the period from October 31, 2013 to October 31, 2014, lived in the state of Kansas and received a letter from Berman & Rabin, P.A. containing the following language:
>
> Re:   Your indebtedness to: [*Creditor Name*]
> Balance: [$X,XXX], [$X,XXX] accrued interest and/or late charges, attorney fees (where applicable), the exact amount to be determined by agreement between you and us or by a court, [XX%] interest per annum from [*Date*].
>
> Class B: All persons who, during the period from October 31, 2013 to October 31, 2014, lived in the state of Kansas and received a letter from Berman & Rabin, P.A., on behalf of Velocity Investments, LLC, containing the following language:
>
> Re:   Your indebtedness to: Velocity Investments, LLC
> Balance: [$X,XXX], [$X,XXX] accrued interest and/or late charges, attorney fees (where applicable), the exact amount to be determined by agreement between you and us or by a court, [XX%] interest per annum from [*Date*].[2]

(ECF No. 58, pp.5-6; and *Appendix 1* at §I). Based on the information produced by Defendants, the Class contains about 1,200 members. (*Id.* at §I).[3] Because the Court already determined that class certification is appropriate (ECF No. 58), there is no need to repeat that analysis here.

**B.   Structure of the Settlement Amount.** The Agreement requires Defendants to pay $6,500.00 to resolve the class claims. Based on Defendants' financials, this is more than the maximum statutory damages available to the Settlement Class under the FDCPA.

**C.   Individual Class Member Benefits.** A Settlement Class Member who submits a timely claim form will receive a *pro rata* share of the $6,500 settlement fund. (*Appendix I*, §III.B.) Plaintiff expects each class member who submits a claim to recover about $105 based on a standard

---

[2] See ECF No. 58, pp.5-6 ("The content of the bracketed information in each letter will differ depending on the specific facts that apply to each recipient.")

[3] In their opposition to class certification, Defendants stated the classes could contain substantially more members. (ECF No. 58, p.7). Subsequently, in connection with parties' mediation, Defendants determined the correct class size was 1,200.

5% claim rate. The settlement fund will not be reduced by the cost of sending notice of the Settlement to the class, Settlement administration expenses, Plaintiff Tripp's individual recovery, or the attorneys' fee and expense award for class counsel.

**D.** **Additional Relief.** In addition to the class relief provided above, Defendants have agreed to pay the cost of preparing, sending notice of the Settlement to the class, the cost of publishing additional notice if necessary, and the cost of handling and disbursing settlement proceeds, from the Settlement Fund.

**E.** **Compensation for the Class Representative:** The typical class action settlement includes an extra payment to the class representative for their service to the class, called an "incentive award." *See*, *e.g.*, *Tennille v. Western Union Co.*, 785 F.3d 422, 428 (10th Cir. 2015) ($7,500 incentive award to the named plaintiffs). However, this Settlement does not provide for an incentive award. Instead, Plaintiff will only receive the maximum statutory damages recoverable for an individual plaintiff, or $1,000 from each Defendant. 15 U.S.C. §1692k(a)(2)(A).

**F.** **Payment of Attorneys' Fees and Costs:** The FDCPA entitles a prevailing plaintiff to recover her counsel's attorneys' fees and costs. *See* 15 U.S.C. §1692k(a)(3); and *Tolentino*, 46 F.3d at 651 ("The reason for *mandatory* fees is that congress chose a 'private attorney general' approach to assume enforcement of the FDCPA.") (emphasis added). Accordingly, the Settlement requires Defendants to pay class counsel's attorneys' fees and costs in the amount agreed by the parties or, if they cannot agree, then in the amount determined by the Court. This amount will be paid in addition to, and thus will not reduce, to the class recovery. The parties are currently negotiating the attorneys' fees and costs award and, if they cannot reach an agreement by the time the settlement is brought before the Court for final approval, class counsel will petition the Court for an award of attorneys' fees and costs from Defendants.

G. **Release.** In exchange for the relief described above, the release is applicable to all class members and releases any and all claims, as more fully set forth in the Settlement Agreement, related to or arising out of claims that were made or could have been made in this litigation regarding the use of the form collection letter at issue. The full scope of the release, and its exact terms, is fully set forth in §II.O and §VI of the Settlement Agreement, attached as *Appendix 1*.

### III. THE COURT ALREADY DETERMINED THAT THE CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION UNDER FEDERAL RULE 23

To settle a case on a class basis, the class must meet the requirements for class certification. *See Manual for Complex Litigation* (Fourth) §21.632, p.321; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is appropriate if the proposed class meets the elements of Federal Rule of Civil Procedure 23, including the requirement that the plaintiff and her counsel be adequate class representatives.[4]

Here, the Court has already determined that the Class meets the requirements of Rule 23, and that Plaintiff Tripp and her counsel are adequate representatives of the Class, when the Court granted Plaintiff Tripp's motion for class certification. (ECF No. 58). Nothing has occurred since the Court's ruling to change the fact that the Class meets the requirements of Rule 23, or change the fact that Plaintiff Tripp and her counsel are adequate to represent the Class.

### IV. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e) provides that "The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's

---

[4] Although this Court already found that the Class meets the superiority requirement of Federal Rule 23(b)(3) as that requirement is ordinarily applied, it must be noted that the superiority analysis is relaxed in the settlement context because in that context trial management considerations are not a factor. *See Amchem*, 521 U.S. at 620 (in settlement context, "a district court need not inquire whether the case, if tried, would present intractable management problems …. for the proposal is that there be no trial") (citations omitted).

approval." The procedure for review of a proposed class action settlement is a well-established two-step process. Newberg & Conte, 4 *Newberg on Class Actions*, §11.25, at 38-39 (4th ed. 2002); *see also* David F. Herr, *Annotated Manual for Complex Litigation,* §21.632 (4th ed. 2004).

The first step is a preliminary, pre-notification determination whether the settlement is "within the range of possible approval." *Newberg*, §11.25, at 38-39 (*quoting Manual for Complex Litigation*, §30.41 (3rd ed.)); *Freebird, Inc. v. Merit Energy Co.*, 2012 U.S. Dist. LEXIS 173075 at *11 (D. Kan. Dec. 6, 2012). This is not a final fairness determination; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the settlement and to proceed with a fairness hearing. *Newberg*, §11.25, at 38-39; *Freebird, Inc.*, 2012 U.S. Dist. LEXIS 173075 at *11 ("The purpose of preliminary approval is to determine whether the proposed settlement is within the range of possible approval, *i.e.*, whether there is any reason not to notify the class of the proposed settlement and proceed with a fairness hearing.") (citations omitted).

The preliminary approval stage is a "preliminary fairness review" of the settlement. *See Manual for Complex Litigation,* §21.632 (4th ed. 2004). If the court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process— the final approval hearing. *See Newberg*, §11.25, at 38-39; *Freebird, Inc.*, 2012 U.S. Dist. LEXIS 173075 at *13.

There is a strong judicial and public policy favoring the voluntary conciliation and settlement of litigation, including class actions. *See Grady v. De Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969) ("It is well-settled, as a matter of sound policy, that the law should favor the settlement of controversies."); and *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits.") With a settlement, the class members get a certain and worthwhile benefit instead of "the mere possibility

of recovery at some indefinite time in the future." *In re Domestic Air Transport.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

Although the Court has discretion in deciding whether a settlement should be approved, one of the main factors for evaluating the settlement is the judgment of the parties that the settlement should be approved. *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). Ultimately, the Court should approve a class action settlement if it is fair, adequate, and reasonable. *See Id.*; *see also In re Motor Fuel*, 2015 U.S. Dist. LEXIS 110827 at *175 (D. Kan. Aug. 21, 2015), *citing* Fed. R. Civ. P. 23(e)(2). When conducting this analysis, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001), *quoting Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988).

In determining whether the proposed settlement is fair, reasonable and adequate, the following factors are considered: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Rutter*, 314 F.3d at 1188.

Here, the proposed Settlement easily meets each factor. The Settlement was fairly and honestly negotiated because it is the result of discovery, contested class certification proceedings and a formal mediation conducted by Magistrate Judge Birzer. The ultimate outcome in doubt because the Court expressly noted, in deciding class certification, that the case merits remain undecided. (ECF No. 58, p.17) ("The Court makes no judgment whether defendants have violated the FDCPA.") The value of an immediate recovery outweighs the mere possibility of future relief

of recovery at some indefinite time in the future." *In re Domestic Air Transport.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

Although the Court has discretion in deciding whether a settlement should be approved, one of the main factors for evaluating the settlement is the judgment of the parties that the settlement should be approved. *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). Ultimately, the Court should approve a class action settlement if it is fair, adequate, and reasonable. *See Id.*; *see also In re Motor Fuel*, 2015 U.S. Dist. LEXIS 110827 at *175 (D. Kan. Aug. 21, 2015), *citing* Fed. R. Civ. P. 23(e)(2). When conducting this analysis, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001), *quoting Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988).

In determining whether the proposed settlement is fair, reasonable and adequate, the following factors are considered: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Rutter*, 314 F.3d at 1188.

Here, the proposed Settlement easily meets each factor. The Settlement was fairly and honestly negotiated because it is the result of discovery, contested class certification proceedings and a formal mediation conducted by Magistrate Judge Birzer. The ultimate outcome in doubt because the Court expressly noted, in deciding class certification, that the case merits remain undecided. (ECF No. 58, p.17) ("The Court makes no judgment whether defendants have violated the FDCPA.") The value of an immediate recovery outweighs the mere possibility of future relief

after protracted and expensive litigation because the Settlement offers the class *more than* the maximum potential statutory damages recoverable if the case were to go to trial. Finally, as noted above, and based on the foregoing, it is class counsel's judgment that the settlement is fair, reasonable and adequate.[5]

Also, the monetary relief secured for the class is significant. Each class member who submits a timely claim form will receive a pro rata share of the Settlement Fund in an amount estimated to be around $105. *Appendix 1* at Exhibit 2, p.1, and Exhibit 3, p.1. Thus, there should be no doubt that the proposed settlement is in the best interest of class members. Class counsel expects no significant opposition to it by any class member. In short, the Settlement should be preliminarily approved.

## V. THE PROPOSED CLASS NOTICE SHOULD BE APPROVED

The Agreement includes notice procedures designed to directly reach each member of the class as is practicable. *Appendix 1* at §IV.B. First, after entry of the Preliminary Settlement Approval Order, the Claims Administrator shall cause a notice (*Appendix 1* at Exhibit 2) to be sent via regular mail to class members based on Defendants' address records, to advise class members about the settlement and direct them to class counsel's Website, where they can obtain additional information about it, including how to comment on the settlement or opt out, and how to make a claim. Moreover, Plaintiff proposes to give class members 60 days to evaluate the notice, ask questions and decide how respond to it, which is more than sufficient. *See DeJulius v. New Eng. Health Care Emples. Pension Fund*, 429 F.3d 935, 945-46 (10th Cir. 2005) (notice sufficient event though most class members given less than 32 days to respond).

---

[5] *See Appendix 2* (Declaration of A.J. Stecklein) at ¶4-¶5; *Appendix 3* (Declaration of Michael S. Hilicki) at ¶6-¶7.

Class counsel's Web site supplements the mail notice with comprehensive information about the settlement (*Appendix 1* at §IV.B.2. and Exhibit 3), a claim form class members can use to make a claim and a procedure for filing claims online (*Appendix 1* at Exhibit 5), plus a copy of the Complaint, the Settlement Agreement, the Preliminary Settlement Approval Order for the class members to review. *Appendix 1* at §IV.B.2. The notice posted on the site provides settlement class members with a detailed explanation of their options, to enable them to make an informed decision. The notice also provides a toll-free phone number for Settlement Class Members to contact class counsel to ask questions. *Appendix 1* at Exhibits 2 and Exhibit 3. A mailed notice combined with a Website for further information is a commonly-approved method for giving notice in class settlements. *See*, *e.g.*, *Hershey v. Exxonmobil Oil Corp.*, 2012 U.S. Dist. LEXIS 50469 at *1-*2, and *5, fn.2 (D. Kan. Apr. 11, 2012); *Berkson v. Gogo, LLC*, 2015 U.S. Dist. LEXIS 163405 at *30-*31 (E.D.N.Y. Dec. 4, 2015); *Perez v. Asurion Corp.*, 501 F.Supp.2d 1360, 1375 (S.D. Fla. 2007); *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) ("All forms of notice directed class members to a website and toll-free number that contained information about the settlement.")

Third, if necessary, the Claims Administrator will arrange for the publication of additional notice to the class to ensure that total notice penetration for the Class is adequate and reaches a minimum of 70% as provided for by Federal Judicial Center guidelines.

Fourth, Defendants will serve upon the Attorneys General of each of the fifty United States and the Attorney General of the United States notice of the proposed settlement, pursuant to 28 U.S.C. § 1715, within ten (10) days after the proposed settlement is filed. *Appendix 1* at §IV.B.6. In short, the notice plan here should be approved.

## VI. THE MATTER SHOULD BE SET FOR A FAIRNESS HEARING

After adequate notice is given to the Settlement Class and the government as required by 28 U.S.C. §1715, a fairness hearing should be held for the Court to confirm that the Settlement is fair, reasonable and adequate. *See Nieberding v. Barrette Outdoor Living, Inc.*, 2015 U.S. Dist. LEXIS 61825 at *5-*6 (D. Kan. May 12, 2015) (Crabtree, J.).

## VII. DEFENDANTS DO NOT OBJECT TO THE RELIEF REQUESTED

Defendants support the relief requested by Plaintiff in this motion, as Defendants agreed to the terms of the settlement and do not oppose its approval. Plaintiff shared a draft of this motion with Defendants before filing it, and Defendants raised no objection.

## VIII. SUGGESTED SCHEDULE

Because time is needed to prepare and issue notice to the class members, because they need to be given sufficient time to consider the notice and decide whether to make a claim or consult with class counsel ask any questions they may have about the settlement, class counsel suggests the following general scheduling outline for evaluating and concluding this settlement:

| | |
|---|---|
| _____, 2016<br>[45 days after the date of the Preliminary Approval Order] | Deadline for notice to be provided to the Class members |
| _____, 2016<br>[60 days after the Notice Deadline] | Deadline for Class members to file objections or submit requests for exclusion (Opt-Out and Objection Deadline) |
| _____, 2016<br>[60 days after the Notice Deadline] | Deadline for Settlement Class Members to Submit a Claim Form (Claim Period) |
| _____, 2016<br>[30 days after the Opt-Out and Objection Deadline] | Deadline for Parties to file the following:<br>(1) List of persons who made timely and proper requests for exclusion (under seal);<br>(2) Proof of Class Notice; and<br>(3) Motion and memorandum in support of final approval, including responses to any objections. |

13

| | |
|---|---|
| _____, 2016 at \_\_\_\_ \_.m.<br>[No earlier than 149 days from the entry of the Preliminary Approval Order] | Final Approval Hearing |

## IX. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court grant preliminary approval to the proposed settlement and notice plan, and set the matter for a fairness hearing by entering the proposed order attached as *Appendix 4*, and grant such other and further relief as deemed just.

Respectfully Submitted,

*s/A.J. Stecklein*
A.J. Stecklein #16330
Michael H. Rapp # 25702
Consumer Legal Clinic, LLC
748 Ann Ave
Kansas City, KS 66101
Telephone: (913) 371-0727
Facsimile: (913) 371-0147
aj@kcconsumerlawyer.com
mr@kcconsumerlayer.com

Keith J. Keogh (*pro hac vice*)
Michael S. Hilicki (*pro hac vice*)
55 W. Monroe Street
Suite 3390
Chicago, IL 60603
Tel:  312-726-1092
keith@keoghlaw.com
mhilicki@keoghlaw.com
*Class Counsel*