IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARY TRIPP,

       Plaintiff,

v.

BERMAN & RABIN P.A. and
VELOCITY INVESTMENTS, LLC,

       Defendants.

Case No. 14-cv-2646-DDC-GEB

## MEMORANDUM AND ORDER

This matter comes before the court on plaintiff and the class's Motion for Attorney Fees and Reimbursement of Expenses and Costs. Doc. 80. Defendants filed a Response (Doc. 83), and plaintiff and the class replied (Doc. 86). The court grants the Motion, in part, as explained below.

**I.    Background**

On January 9, 2017, the court entered an order granting plaintiff's Motion for Final Approval for Class Settlement (Doc. 82). This settlement resolved plaintiff's lawsuit to remedy the defendants' alleged violation of the Fair Debt Collection Practices Act ("FDCPA"). Plaintiff alleged that Velocity Investments, LLC, and the law firm it hired to collect their debts, Berman & Rabin, LLC, violated the FDCPA by sending plaintiff and other Kansas residents a form debt collection letter that did not specify the amount of debt it sought to collect. Plaintiff filed this lawsuit after defendants filed a collection suit against her in Kansas state court. Defendants removed the case to this court in December 2014. Discovery ensued. The parties litigated class certification, and the court certified the class on September 29, 2015. The parties soon settled.

1

Over the next month or so, class counsel negotiated and drafted the required settlement papers. This work included drafting a settlement agreement, a short notice form to mail to class members, a claim form, and a longer settlement notice to post on class counsel's website. Class counsel also prepared a motion seeking preliminary approval of the settlement, and the court granted it on July 6, 2016.

Next, class counsel prepared for the final settlement approval hearing. This court held the hearing on December 15, 2016. And, on January 9, 2017, the court approved the final settlement. The final settlement required defendants to pay $8,500 to the Claims Administrator. The Claims Administrator will pay $2,000 to plaintiff and distribute the rest pro-rata to the class members submitting valid, timely claims.

The FDCPA caps the statutory damages recoverable for successful plaintiffs. *See* 15 U.S.C. § 1692k(a)(2)(B)(i) (capping the named plaintiff's damages at the lesser of $500,000 or 1% of the debt collector's net worth); *see also* § 1692k(a)(2)(B) (limiting the class members' damages to their pro rata share of the lesser of $500,000 or 1% of the debt collector's net worth). In short, the parties' settlement agreement awarded plaintiff and the class more than they would have recovered under the maximum statutory damages.

The FDCPA provides that in a successful action, the court should award reasonable attorneys' fees in relation to the work and costs expended. Plaintiff and the class are prevailing parties, and class counsel now seeks $103,965.00 in fees[1] and $1,406.68 in costs.

**II.    Legal Standard**

Fed. R. Civ. P. 23(h) provides: "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." The FDCPA mandates reasonable attorney fees for successful litigants. 15 U.S.C.

---

[1] In addition to $103,965.00, class counsel also seeks the fees incurred briefing the attorney fee issue.

§ 1692(k).  The district court has broad authority over awards of attorney fees.  *Law v. Nat'l Collegiate Athletic Ass'n*, 4 F. App'x 749, 751 (10th Cir. 2001).  "A determination of a reasonable attorney's fees award begins with calculating the 'lodestar,' that is, 'the reasonable number of hours spent on litigation multiplied by a reasonable hourly rate.'"  *Weaver v. JTM Performant Recovery, Inc.*, No. 13-cv-2408-JTM, 2014 WL 4843961, at *4 (D. Kan. Sept. 29, 2014).  The party requesting attorney fees bears the burden to prove the amount of hours spent on the case and the appropriate hourly rates.  *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1234 (10th Cir. 2000).  "The focus must be on the 'prevailing market rate in the relevant community.'"  *Id.* (quoting *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998)).  Indeed, the Tenth Circuit has held that a "district court abuses its discretion when it ignores the parties' market evidence and sets an attorneys hourly rate using the rates it consistently grants." *Id.*

"Once an applicant has met this burden, the lodestar figure is presumed to be a reasonable fee."  *Weaver*, 2014 WL 4843961, at *4 (citing *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998)).  But, the court may adjust the lodestar "to account for the factors set forth in the Kansas Rules of Professional Responsibility." *Id.*  (citing *Davis v. Miller*, 7 P.3d 1223, 1236 (Kan. 2000)).  These eight factors consist of the following:

> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) The fee customarily charged in the locality for similar legal services; (4) The amount involved and the results obtained; (5) The time limitations imposed by the client or by the circumstances; (6) The nature and length of the professional relationship with the client; (7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) Whether the fee is fixed or contingent.

*Id.* (citing Kan. R. Prof'l Conduct, 1.5(a)); *see also Sheldon v. Vermonty*, 237 F. Supp. 2d 1270, 1279 (D. Kan. 2002). With this standard in mind, the court analyzes plaintiff and class counsel's request for $103,965.00 in attorney fees and $1,406.68 in costs.

### III. Analysis

#### A. Calculating the Lodestar Amount

Class counsel calculates their proposed fee using the hours and rates described in declarations from Keith Keogh and A.J. Stecklein, two of the lead attorneys on plaintiff's side of the caption. Doc. 81 at 7; *see also* Doc. 80-3, Doc. 80-4. Defendants oppose the figures used to reach class counsel's proposed fee for a variety of reasons. These conflicting positions and the arguments advanced for each one are discussed in the following analysis.

##### 1. Hours incurred by class counsel

"Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998). As support for their requested fee, class counsel submitted declarations from Mr. Keogh and Mr. Stecklein. Doc. 80-3, Doc. 80-4. Mr. Keogh and Mr. Stecklein attached detailed billing records to their declarations. The records identify, specifically, the hours class counsel devoted to the case, as well as law clerks, associates, and paralegals, the specific tasks each completed for the case, and the number of hours they devoted to each task. *See* Doc. 80-3 at 28–66; Doc. 80-4 at 7–10.

Defendants contend class counsel's hours reflect hours spent on unnecessary, duplicative, and excessive tasks. Defendants assert class counsel has failed to exercise "billing judgment."

*Case*, 157 F.3d at 1250. "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Id.* Defendants' Opposition discusses where it believes class counsel has failed to "winnow[ ] the hours." The court addresses each challenge presented by defendants' arguments.

### a. Excessive Billing Entries

Defendants assert class counsel's billing records reflect that Mr. Keogh billed 3.3 hours for tasks that were "unnecessary and excessive." Doc. 83 at 5. Specifically, defendants contend Mr. Keogh billed excessive hours: (1) reviewing emails between Mr. Hilicki, a paralegal, and Mr. Stecklein (0.8 hours); (2) drafting or reviewing emails about defendants' motion for an extension of time to file their Response to class counsel's Motion to Compel Fees (0.7 hours); (3) reviewing emails about Mary Tripp's notice (0.3 hours); (4) reviewing emails about a credit charge pertaining to costs of mailing class member notices (0.3 hours); reviewing emails about the local rules for filing a Motion to Compel (0.5 hours); and, (5) reviewing emails from the counsel and court clerk about setting a conference call (0.7 hours). *See* Doc. 83 at 5–7; *see also* Doc. 80-3 at 32–33, 35–36. These challenges total 3.3 of the 59.8 hours Mr. Keogh incurred in the case.

The only excessive entries defendants identify are those involving Mr. Keogh's email activities. But Mr. Keogh represents that he removed the 42.9 hours he spent reviewing all emails—including the 3.3 hours that defendants challenge here—from the total hours used to calculate the lodestar figure. Doc. 80-3 at 5 (Keogh Dec. ¶ 11). Mr. Keogh also asserts that the remaining 16.9 hours for which he seeks compensation consists of necessary activities "such as communicating with [d]efendants' counsel, drafting the proposed protective order the Court entered, analyzing [d]efendants' net worth data, preparing for and attending a conference with

5

the [c]ourt, communicating with co-counsel about case strategy and legal issues, and giving input into briefs." Doc. 86 at 3. Class counsel's records on these entries are meticulous, and defendants challenged none of them. *See* Doc. 80-3 at 28–66; *see also* Doc. 83. Because counsel removed the 3.3 hours that defendants challenge from the lodestar calculation, defendants' argument about excessive billing entries for email is not persuasive.

### b. Duplicative Entries

Defendants also assert class counsel's billing records "reflect 1.2 hours in duplicative time entries." Doc. 83 at 7. Specifically, defendants claim Mr. Keogh billed duplicative entries: (1) in two separate entries for August 29, 2016, for reviewing an "email from MSH re conferring with OC on Mot to compel time records" (0.2 hours); (2) in two separate entries for November 5, 2015, for an "Email to MSH re mediation w/ Magistrate (0.2 hours); (3) in two separate entries for August 25, 2015, for "Email from Cindy Walters with Combined Rogs and RFPs" and "Email from Cindy Walters with first Rogs and RFPs to Plaintiff" (0.2 hours total); (4) in two separate entries for August 31, 2015, for "Email from Cindy Walters with Expert Witness Disclosure" and "Email from Cindy Walters with Ds Responses to First Discovery" (0.2 hours total); (5) for two separate entries on May 26, 2015, for "Email from Cindy Walters with Ds Responses to First Discovery (0.2 hours total); and, (6) in two separate entries for January 31, 2015, for "Email from AJ re agreeing to extension" and "Email from AJ re approval for extension" (0.2 hours total). *See* Doc. 80-3 at 37, 50, 53, 54, 62.

All of these allegedly duplicative entries, however, describe time Mr. Keogh spent reviewing emails. Again, class counsel adequately has explained that it already removed these entries from the figure they have used to calculate the lodestar amount. Defendants' argument about duplicative billing entries is not persuasive.

### c. Hours Billed Attending Mediation and the Fairness Hearing

Finally, defendants object to class counsel billing a total of 26 hours for two attorneys to travel to and attend the mediation. Individually, Mr. Stecklein billed 12 hours attending the mediation, and Mr. Hilicki billed 14 hours. Defendants assert class counsel failed to demonstrate why it was necessary for both Mr. Stecklein and Mr. Hilicki to attend, or why it was necessary for counsel to appear in person rather than by phone. To support this position, defendants point to the combined 39 years of consumer class action experience between Mr. Stecklein and Mr. Hilicki, and assert either attorney was qualified to handle the mediation on his own. And, defendants emphasize only one attorney represented defendants at the mediation.[2]

In their Reply, class counsel asserts it was not duplicative for Mr. Stecklein and Mr. Hilicki both to attend the mediation and fairness hearing. Class counsel asserts Mr. Hilicki took the lead representing the class at both proceedings, but his appearance was *pro hac vice*. Class counsel asserts Mr. Stecklein attended to comply with D. Kan. Rule 5.4.2, which requires "meaningful participation by local counsel" with attorneys admitted *pro hac vice*.

Starting with the mediation-based aspect of this objection, class counsel submits that it was necessary for both Mr. Stecklein and Mr. Hilicki to appear in person because telephone attendance reduces the effectiveness of the mediation process. Class counsel also cites a Middle District of Florida case where the court required personal attendance at mediation conferences because "it strongly believes that mediation conferences are most effective when attended personally, rather than telephonically." *Dodd v. Matthews*, No. 8:12-cv-2054-T-33TGW, 2013 WL 3491167, at *2 (M.D. Fla. July 10, 2013).

---

[2] Doc. 64 recites that Mr. Larson and Mr. Meyer attended the mediation on November 18, 2015. The court has confirmed that Mr. Meyer served as defendants' representative with settlement authority during the mediation. Mr. Larson thus represented the only attorney who attended the mediation for defendants.

Our court values personal participation as well. But this principle doesn't really answer the objection lodged by defendants here. For defendants' claim is that plaintiff's counsel overbilled by dispatching two of their four lawyers of record to the mediation session led by Judge Birzer.

Our local rule doesn't bring much clarity to this issue.[3] It defines the lawyers who *must* appear, in person, for a court referred mediation session. "The parties' attorney(s) responsible for resolution of the case must also be present." D. Kan. Rule 16.3(c)(2). This standard, though clear in the abstract, is a challenging one to apply to the current circumstances. Did our rule require both Mr. Stecklein and Mr. Hilicki to attend the mediation sessions? It did if both were—in the words of our rule— "responsible for resolution."

As the lawyers seeking the fee award, class counsel bears the burden to prove the reasonableness of the fee award requested. *United Phosphorus, Ltd.*, 205 F.3d at 1234. *See also Ramos v. Lamm*, 713 F.2d 546, 554 n.4 (10th Cir. 1983) ("the presence of more than two lawyers during trial or the presence of more than one lawyer at depositions and hearings must be justified to the court."). The motion and supporting papers never establish that both lawyers were "responsible for resolution of the case." D. Kan. Rule 16.3(c)(2). So this part of class counsel's rationale is unpersuasive.

This conclusion does not decide the bigger questions, *i.e.,* does a reasonable fee award encompass both Mr. Hilicki and Mr. Stecklein's attendance at the mediation? This decision presents a close question and some circumstances favor each side of the argument. For instance, Judge Gwyne Birzer, the magistrate judge assigned to the case, led the mediation session in this

---

[3] *See e.g.*, *Turner v. Young*, 205 F.R.D. 592, 595 (D. Kan. 2002). In that case, Judge O'Hara ruled that D. Kan. Rule 16.3 requires attendance, at mediation sessions led by a private mediator, "by a party representative with settlement authority." *Id.* Judge O'Hara also explained what "attendance" means and does not mean: it means a person with settlement authority must "appear in person and participate directly, not to stand by or participate by telephone." *Id.*

case. And she conducted it in the United States Courthouse in Wichita. The court thus understands why Mr. Stecklein viewed attendance at this session within his local counsel duty of "meaningful participation." D. Kan. Rule 5.4.2.

Still, should defendants bear the financial burden of plaintiff's decision to retain out-of-state counsel to prosecute her claims? Or the burden of that lawyer's decision to accept and file a case in a forum where he was not admitted to practice? On the precise circumstances presented here, the court concludes that defendant should not pay for decisions made by plaintiff and class counsel. Based on its exposure to Mr. Hilicki in this case and its larger familiarity with Mr. Stecklein, the court perceives both as able, sophisticated, and experienced consumer lawyers with meaningful class action experience. Each one is capable of handling a mediation session by himself—as defendants' counsel did in this case—particularly in a case where the total recovery for the plaintiff class amounted to $8,500. *See* Doc. 64. And if some issue or problem had arisen that required the special skills of the other, Mr. Hilicki or Mr. Stecklein could have solicited that assistance by telephone. That approach is far more efficient and thus more nearly serves the aims of our rules. *See* Fed. R. Civ. P. 1. The court thus reduces Mr. Stecklein's hours by 12, the amount attributed to Mr. Stecklein's participation in the case's mediation session.

The fairness hearing, however, is a different matter. It was a formal, on-the-record hearing conducted in open court. From its own participation and observation in this hearing, the court knows that Mr. Hilicki and Mr. Stecklein both contributed meaningfully to the class' preparation and presentation. Also, this is the kind of hearing that local counsel customarily would attend. The court thus overrules defendants' objection to the fee request based on both lawyers' participation in this installment of the case.

## 2. Hourly Rates

Defendants next urge the court to reduce Mr. Keogh, Mr. Hilicki, and Mr. Stecklein's hourly rates. Defendants claim class counsel has failed to carry its burden to show that the court should award out-of-state rates in this case.

The court has discretion to set a reasonable hourly rate. *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995). "Hourly rates must reflect 'the prevailing market rates in the relevant community.'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Local fee rates should be applied, unless the subject of the litigation is "so unusual or requires" special skills that "only an out-of-state lawyer possesses." *Id.*

Class counsel submits their rates for this case are: (1) $600 per hour for senior attorneys Mr. Keogh and Mr. Hilicki; (2) $400 per hour for senior attorney Mr. Stecklein; (3) $275 per hour for associate Katherine Bowen; (4) $200 per hour for first-year associate Matthew Robertson; and, (5) $175 per hour for paralegals.

Defendants contend that class counsel have failed to make a clear showing that out-of-state rates should apply. While defendants have not proposed what reasonable fees might be, they urge the court to reduce plaintiff's rates using relevant factors to determine a reasonable rate. The court addresses the proposed rates for the attorneys, below.

### a. Senior Attorneys Mr. Keogh, Mr. Hilicki, and Mr. Stecklein

Class counsel requests an hourly rate of $600 for Mr. Keogh and Mr. Hilicki, and $400 for Mr. Stecklein. Class counsel has tried to support their requested fees with evidence of rates awarded to counsel with less experience. *See Koehler v. Freightquote.com, Inc.*, No. 12-2505-DDC-GLR, 2016 WL 3743098, at *1 (D. Kan. July 13, 2016) (finding that a $400 "blended" rate for attorneys was reasonable—though on the high end—for calculating the lodestar in a local

Fair Labor Standards Act case for an attorney with ten years' experience and his associates with similar experience); *see also Weaver*, 2014 WL 4843961, at *12 (finding an hourly rate of $275 was reasonable for an attorney with five years' experience in FDCPA cases). This argument doesn't help justify the fee application at issue here. A $400 "high end" award doesn't do much to justify a $600 per hour rate request.

Class counsel next relies on the Laffey Matrix, which purportedly represents reasonable fees in the D.C.-Baltimore area. *See* http://www.laffeymatrix.com/see.html (visited Apr. 28, 2017). The Laffey Matrix assigns attorney fee rates by the attorney's year out of law school. Under this matrix, Mr. Hilicki and Mr. Stecklein's hourly rate is $826, Mr. Keogh's hourly rate is $685, and Ms. Bowen's hourly rate is $421. But whatever are the reasonable rates in Washington and Baltimore, the court must determine the appropriate hourly rate for lodestar purposes by referring to "the prevailing market rates in the relevant community." *Wilkinson v. I.C. Sys., Inc.*, No. 09-2456-JAR, 2011 WL 5304150, at *3 (D. Kan. Nov. 1, 2011). In determining the prevailing market rate, the court may "use other relevant factors, including its own knowledge, to establish the rate." *Id.* Here, the court, in its discretion, determines that a $400 hourly rate better reflects the prevailing market rate—indeed, a rate on the high end—for senior attorneys in the Kansas City area. The court finds $400 to be a reasonable hourly rate for senior attorneys Mr. Hilicki, Mr. Keogh, and Mr. Stecklein.

Class counsel also asserts that their proposed rates account for the contingency-risk and delay in payment. Doc. 81 at 14. Class counsel contends their rates are justified because they risked earning no fees for their work and losing out-of-pocket expenses they advanced in addition to waiting more than two years to receive compensation. But these risks are not something the court considers to calculate the lodestar amount. *See Hensley v. Eckerhart*, 461

U.S. 424, 434 (1983) (explaining that after calculating the "product of reasonable hours times a reasonable rate, [the lodestar]," other considerations may lead the court to "adjust the fee upward or downward."). The court will use a $400 hourly rate to calculate the portion of the lodestar for hours billed by Mr. Hilicki, Mr. Keogh, and Mr. Stecklein.

### b. Associates and Paralegals

Defendants do not specifically challenge Ms. Bowen or Mr. Robertson's proposed hourly rate of $275 and $200, respectively. Nor do defendants challenge the proposed paralegal rate of $175 per hour. And, as discussed above, defendants have not provided the court with any evidence about what rates might be reasonable for the associates and the paralegals. The court finds these rates are reasonable, and uses them to calculate the lodestar amount. *See Wilkinson*, 2011 WL 5304150, at *3 (finding that $290 per hour is reasonable in the Kansas City area for lawyers with seven to ten years' experience and $125 per hour is reasonable for paralegals).

### 3. Additional Hours

Class counsel asserts that the court should award them the hours incurred preparing their Reply in addition to their hours litigating and settling the case. Class counsel represents that the hours class counsel incurred are: (1) Mr. Hilicki (14.9 hours); (2) Mr. Stecklein (2.0 hours); and, (3) Mr. Robertson (12.6 hours). Class counsel submitted declarations and timesheets with their Reply. Class counsel contends that they would not have incurred these additional hours if defendants had been willing to negotiate a settlement of the fee and cost award (which plaintiff reportedly offered, and defendants refused, preferring instead to brief the issue). Class counsel asserts the court should include these additional hours it incurred researching and drafting the Reply to defendants' Opposition in the lodestar amount. The court agrees, and calculates the lodestar amount below.

12

### 4. Lodestar Calculation

The court calculates the lodestar as follows:

| Counsel | Hours | Rate | Total |
|---|---|---|---|
| Mr. Keogh (senior attorney) | 16.9 [4] | $400 | $6,760 |
| Mr. Hilicki (senior attorney) | 108.9 | $400 | $43,560 |
| Mr. Stecklein (senior attorney) | 43.6 [5] | $400 | $17,440 |
| Ms. Bowen (associate) | 5.1 | $275 | $1402.50 |
| Mr. Robertson (law clerk) | 6.8 | $100 | $680 |
| Mr. Robertson (first year associate) | 20 | $200 | $4,000 |
| Monika Swiencinski (paralegal) | 2.1 | $175 | $367.50 |
| Matthew Seckel (paralegal) | 8.3 | $175 | $1,452.50 |
| Anne Lamoy (paralegal) | 1.5 | $175 | $262.50 |

**Total: $75,925**

Additional hours spent preparing attorney fee memoranda

| | | | |
|---|---|---|---|
| Mr. Hilicki (senior attorney) | 14.9 | $400 | $5,960 |
| Mr. Stecklein (senior attorney) | 2.0 | $400 | $800 |
| Mr. Robertson (first year associate) | 12.6 | $200 | $2,520 |

**Total: $9,280**

---

[4] This reflects Mr. Keogh's billing entries after removing 42.9 hours reviewing emails.

[5] Mr. Stecklein submitted 55.6 hours for the time he spent working on the case. The court reduces the amount of time Mr. Stecklein devoted to traveling to and attending the mediation hearing (12 hours) and calculates his portion of the lodestar using 43.6 hours. *See* part A.1.c., *supra*; see also Doc. 80-4 at 7.

### 5. Adjustment

The court calculates the lodestar amount as $85,205. But, the "product of reasonable hours times a reasonable rate does not end the inquiry." *Hensley*, 461 U.S. at 434. The court may adjust the fee upward or downward based on other considerations. *Id.* Here, the court considers the factors outlined in the Kansas Rules of Professional Conduct.

The fourth factor, which considers the "amount involved and the results obtained," seems particularly relevant in this case. Here, class counsel seeks a high attorney fee award compared to the settlement. While the court recognizes that class counsel negotiated a favorable settlement for plaintiff and the class, the $8,500 settlement seems incongruous with such high attorney fees. From the start of the case, defendants' net worth significantly limited the amount recoverable under the statute.

On the other hand, the Seventh Circuit has held that "[p]aying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law." *Tolentino v. Friedman*, 46 F.3d 645, 653 (7th Cir. 1995). Indeed, the Third Circuit has stated:

> Congress provided fee shifting to enhance enforcement of important civil rights, consumer-protection, and environmental policies. By providing competitive rates we assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated.

*Id.* (quoting *Student Pub. Interest Research Grp. v. AT&T Bell Labs.*, 842 F.2d 1436, 1449 (3d Cir. 1988)).

Defendants contend that the disparity between the settlement amount and the requested fee justifies a downward adjustment. The proposed fee award is ten times more than the settlement amount. However, in *Wilkinson*, our court approved an attorney fee award of

14

$18,386.00 in an FDCPA case that settled for $1,000. *Wilkinson*, 2011 WL 5304150, at *4. The attorney fee in that case was 18 times more than the settlement.

At some level, a disparity between the class recovery and the lodestar calculation certainly would warrant a reduction from the lodestar amount. But where that disparity results, at least in part, from a defendants' demonstrated decision to defend the case aggressively, it is less likely to justify a lodestar reduction. Here, the record shows defendants litigated the case aggressively. They opposed class certification, as was their right. But such strategic decisions can create a disparity and when they do, they largely nullify the arguments for a lodestar reduction.

The court thus declines to reduce the attorney fees in this case to make them more nearly commensurate with plaintiff and the class' recovery. *See also Wilkinson*, 2011 WL 5304150, at *4 (recognizing that in some cases courts reduce the award of attorneys' fees in proportion to the damages obtained, but this is not necessarily true in consumer protection actions).

### B. Costs

"Unless a federal statute, these rules, or a court order provides otherwise," the court should award costs to the prevailing party. Fed. R. Civ. P. 54(d)(1). Class counsel seeks reimbursement for its out of pocket costs including filing fees (original and *pro hac vice*) for $275, and travel expenses (airfare, hotel, and transportation for the mediation and fairness hearing) for $1,131.68. In total, class counsel seeks $1,406.68 in costs. The court finds these costs are reasonable and awards them to class counsel as the prevailing party.

**Total costs: $1,406.68**

## IV. Conclusion

For the reasons discussed above, the court grants in part plaintiff and the class's motion for attorney fees. The court awards fees of $85,205 and costs of $1,406.68.

**IT IS THEREFORE ORDERED THAT** plaintiff and the class's Motion for Attorney Fees and Reimbursement of Expenses and Costs (Doc. 80) is granted according to the terms adopted in this Order.

**IT IS SO ORDERED.**

**Dated this 25th day of May, 2017, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**